IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA, ALEXANDRIA DIVISION

|  |  |
|---|---|
| JOSEPH RUFO,<br><br>Plaintiff,<br><br>vs.<br><br>ACLARA TECHNOLOGIES, LLC,<br><br>Defendant. | Case 1:18-cv-37-LMB-MSN<br><br>**JURY TRIAL DEMANDED**<br><br>*ELECTRONICALLY FILED* |

## FIRST AMENDED COMPLAINT

**I.   NATURE OF THE ACTION**

1.     Aclara Technologies, LLC ("Aclara") unlawfully retaliated against Plaintiff Joseph Rufo ("Rufo") immediately after he reported an EEO analysis showing the company's disciplinary policies had an acutely disparate impact on black and multi-racial employees. After issuing his report, Rufo suggested the company investigate further and consider corrective measures out of a genuine concern that intentional discrimination may have been occurring. Instead, the company reacted to Rufo's report by putting him on a final written warning and performance improvement plan, suggesting that Rufo had no future with the company.

2.     After the initial Complaint was filed in this Action, Aclara further retaliated against Rufo by taking away critical job duties, giving him a negative performance review based largely on his protected activity, and denying him an annual merit salary increase.

3.     Finally, on June 4, 2018, Aclara fired Rufo in further retaliation for his protected activity under 42 U.S.C. § 1981.

## II. JURISDICTION AND VENUE

4. This Court has federal question jurisdiction over Rufo's claims pursuant to 28 U.S.C. § 1331 as this action arises under the laws of the United States, specifically 42 U.S.C. § 1981.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendant conducts business in this district and the majority of events described in this action took place within this judicial district.

## III. THE PARTIES

6. Plaintiff Rufo is an adult individual, residing at 3811 Hummer Rd, Annandale, Virginia 22003.

7. Defendant Aclara is a business corporation formed in Ohio and registered to do business in the Commonwealth of Virginia. Aclara employs Rufo at its office located at 11951 Freedom Drive, Suite 301, Reston, Virginia 20190.

## IV. FACTS

8. Rufo is a *cum laude* graduate of Virginia Tech and a decorated 12-year combat veteran who served two tours of duty in Iraq. Rufo was awarded the Bronze Star for his heroic actions in combat.

9. Rufo was employed as Aclara's Office Coordinator in the Smart Grid Solutions ("SGS") division's Department of Organizational Effectiveness and Administration, reporting to Jill Mecey, Manager of Organizational Effectiveness and Administration.

10. Rufo was assigned to prepare and maintain a spreadsheet of disciplinary actions taken against certain groups of employees in the company's SGS division. In completing this

assignment, Rufo took the initiative to analyze the data in relation to the race of the employees to determine whether black and multi-racial employees were being disciplined more harshly than other employees.

11.   Rufo's analysis demonstrated that Aclara disciplined its black and multi-racial employees far more often than white employees. While black and multi-racial employees only made up 33.1% of the workforce that self-identified their race, they were subject to 79.3% of the disciplinary actions.

12.   While Rufo believed that this pattern demonstrated potential intentional discrimination, he was unable to determine it since the employees work at remote sites and he had no personal interaction with them or their supervisors. Rufo therefore decided to submit the data to his superiors with the suggestion that they investigate further.

13.   On August 8, 2017, Rufo submitted the report demonstrating acute disparate impact upon the basis of race to Lyn Salvo ("Salvo"), Senior Director of Human Resources, and to his superiors, suggesting the company investigate further.

14.   In an August 11, 2017 instant message exchange (attached as **Exhibit A**), Rufo's immediate supervisor, Jill Mecey ("Mecey"), told him he "may have put the company at risk" and that Mecey would have to meet with Salvo and Michael Garcia, Senior VP of HR, to "access [sic] damage control."

15.   On August 14, 2017, Mecey placed Rufo on a "final written warning and performance improvement plan" (the "PIP") (attached as **Exhibit B**). The PIP castigated Rufo for his submission of the EEO disparate impact analysis, as follows:

> [Y]ou were asked to track disciplinary actions and log them onto a spreadsheet. You provided some additional data that was not instructed for you to provide. Although the data may seem important for us to track, the information was

> inaccurate and not completed by someone in the statistical analysis field of expertise. You should only perform the duties requested of you.

16. The PIP also contained thinly-veiled language conveying that Rufo had no future at the company because he had created "mistrust" and had "questionable motives":

> We've had several conversations about your desire to move up in the organization. During those conversations, I counseled you to learn and excel in your new position and in time you may be considered for other positions. You assured me that you had no intention of looking for other jobs in the near future. Shortly after our conversation you applied for the HR Manager position for SGS and sought out the Sr. Director of HR and discussed with the VP of SGS rather than coming to me for guidance and help. This kind of behavior can lead to mistrust and questionable motives.

17. It is common and often encouraged for employees seeking to advance within an organization to reach out to senior managers for mentoring and guidance. It was hardly surprising that Rufo, with a professed desire to be promoted, would apply for promotions for which he was qualified. Also, the PIP misquotes the relevant discussion, in that Rufo had told his supervisor he had no desire to seek employment outside Aclara, not that he would decline to seek promotions within the company. Aclara did not raise perceived "questionable motives" until after Rufo submitted the EEO analysis.

18. Rufo notified his superiors of his belief that he had been placed on a PIP in retaliation for his submission of the EEO analysis.

19. Rather than retracting the PIP, however, Mecey provided Rufo with a memorandum dated August 28, 2017 (the "Memorandum"), attached as **Exhibit C**, "to make sure there [was] no misunderstanding" regarding the PIP.

20. The Memorandum further critiqued Rufo for exercising "poor judgment" by engaging in the protected activity of collecting and analyzing EEO data, and attempted to justify the imposition of the PIP, as follows:

> You also showed poor judgment when you took it upon yourself to collect certain EEO data. I understand that you thought Lyn Salvo gave you permission to begin this huge undertaking, but I've spoken with Lyn, and it was not her request that you run the report. She thought you had created charts to track disciplinary actions, which was your assigned job responsibility. Any collection of EEO data is the responsibility of HR and not Administration. Further, if such a task were to be undertaken, it would be done at the direction of Legal and only after seeking advice of counsel on how to properly do an internal audit.

21. Aclara failed to provide Rufo with any concrete or actionable benchmarks that he should meet to demonstrate improvement under the PIP and thereby remove himself from it.

22. Further, the PIP had no formal end date. On Friday, September 29, 2017 (one and a half months after the PIP was issued), Rufo inquired of Mecey whether he was still on a PIP. She replied that he was. (See **Exhibit D**).

23. On December 14, 2017, Mecey told Rufo he would be removed from the PIP, but provided no date by which the removal would occur. Mecey also advised Rufo he would be ineligible for an end of year merit increase due to the PIP.

24. During the entire duration of the PIP, Aclara did not provide Rufo any counseling about how his performance should be improved.

25. Aclara's Job Opportunity Guidelines set forth the procedure for promoting internal candidates to fill open positions within the company. (See **Exhibit E**). Those guidelines state that in order to be eligible for a promotion, an employee must have a satisfactory performance record, precluding the promotion of an employee who has been placed on a PIP.

26. The original complaint in this matter was filed on January 9, 2018. (Dkt. 1). At that time Rufo remained an Office Coordinator at Aclara.

27. Aclara became aware of the complaint on or about January 17, 2018, prior to service, when Rufo's counsel received a telephone message from Aclara's counsel regarding the case.

28. Starting on that date, Rufo noticed a pronounced shift in Mecey's tone and attitude towards him.

29. One day later, on January 18, 2018, Mecey informed Rufo that he would no longer be responsible for new hire paperwork.

30. This responsibility was a core part of Rufo's job duties, and he had previously told Mecey that it was the duty that he most enjoyed in his position. He further regarded it as critical to his advancement in the HR profession.

31. On January 19, Rufo emailed Mecey asking her to reconsider this change. Mecey responded in the negative. (**Exhibit F**).

32. After this lawsuit was filed, Mecey monitored Rufo's activities more closely, looking to catch him in mistakes.

33. On April 26, 2018, Rufo received his 2017 end of year performance appraisal, which Mecey had delayed due to the PIP. (**Exhibit G**).

34. While the performance appraisal states that Rufo was removed from the PIP on December 19, 2017, Mecey had not informed him of this previously.

35. Otherwise, the performance appraisal was unfairly critical of Rufo, rating him 2 out of 5, which is defined as "below expectations".

36. In particular, Mecey gave Rufo low scores for problem solving, decision-making, leadership, teamwork/collaboration, and communication. She gave him only satisfactory ratings in project management, professional knowledge, and technical competence.

37. In the narrative section of the performance appraisal, Mecey outlined the same alleged deficiencies, including those relating to his EEO analysis, as raised in the PIP. She also falsely accused him of "mistrust and questionable motives," and of having "behavioral issues,"

5262876

being "rude", "disrespectful", "adversarial", "dishonest", and "not sincere", and "sending lengthy emails to document his position."

38. All of these false accusations relate to the dynamic created by Mecey's retaliation for Rufo's protected activities of submitting his EEO analysis and filing this lawsuit. Rufo recorded a phone call, with Mecey's permission, regarding his performance because the subject matter of the phone call was likely to be at issue in this litigation. This was to the benefit of both himself and Aclara because it prevented any future dispute as to what was said on the call. Similarly, sending "lengthy emails to document his position" refers directly to the email attached as Exhibit F, in which Rufo documented Mecey's retaliatory conduct in removing one of his key job responsibilities.

39. Despite the ongoing litigation and Mecey's continuing hostility and retaliation, Rufo did his utmost to be professional with everyone at Aclara and perform his responsibilities to the best of his ability.

40. No merit increase was mentioned during the review discussion. Rufo raised this in an email later that day, to which Mecey responded, "you are not going to receive a merit increase due to your overall performance appraisal score." (**Exhibit H**).

41. Annual merit increases are standard at Aclara for positions such as that held by Rufo.

42. On the morning of Monday, June 4, 2018, Aclara fired Rufo. Rufo was escorted to Alvin Jackson's office and informed, by Jill Mecey and Michael Garcia (Senior Vice President, Human Resources and Organizational Effectiveness) via speakerphone from Aclara's headquarters in St. Louis, that "his position was being eliminated." When he questioned why he was being fired, he was told that the size of the Herndon office suddenly did not justify his position.

His pay was terminated effective immediately. When he attempted to organize the papers on his desk in order to facilitate an easier transition of his duties to another employee, Jackson told him just to gather his belongings and leave. He was then escorted from the office in a humiliating manner in front of his coworkers.

43. The stated reason for Rufo's termination—that "his position was being eliminated" because the size of his office did not justify his position—was a pretext for retaliation.

V. **COUNT I: DECLARATORY AND INJUNCTIVE RELIEF UNDER 42 U.S.C. § 1981**

44. Rufo incorporates all preceding paragraphs as though set forth in full herein.

45. Aclara's conduct towards Rufo, including but not limited to the retaliatory PIP, performance appraisal, failure to give a merit increase, and the firing, had the effect under the company's Job Opportunity Guidelines of derailing Rufo's career at the company by preventing him from continuing to work for Aclara and advancing his career there.

46. Aclara's actions, including but not limited to the PIP, performance appraisal, failure to give a merit increase, and firing, constitute retaliation under Section 1981 because Rufo was engaged in the protected activity of investigating and exposing racially discriminatory practices that had a disparate impact on black and multi-racial employees, and the further protected activity of filing this lawsuit.

47. The PIP and performance appraisal were materially adverse because they prevented Rufo's advancement within the company and ultimately led to his firing.

48. The failure to give Rufo a merit increase was materially adverse because it affected the terms and conditions of his employment.

49. Rufo's firing was also materially adverse.

50. There was no legitimate basis for Aclara's actions against Rufo—they were purely retaliatory.

51. Rufo therefore seeks an injunction ordering Aclara to and expunge the PIP and the performance appraisal, from Rufo's disciplinary record at the company, reinstate him, and grant him a retroactive performance increase.

52. Rufo further seeks a declaration that Aclara retaliated against him in violation of Section 1981.

## VI.     COUNT II: RETALIATION IN VIOLATION OF 42 U.S.C. § 1981

53. Rufo incorporates all preceding paragraphs as though set forth in full herein.

54. As described above, Rufo engaged in activity protected by Section 1981 by investigating and reporting that Aclara's disciplinary policies had a disparate impact upon black and multi-racial employees. Rufo engaged in further protected activity under Section 1981 by filing this lawsuit.

55. Aclara illegally retaliated against Rufo for that protected activity by placing him on a final written warning and performance improvement plan, thereby precluding him from promotion opportunities within the company.

56. Aclara further illegally retaliated against Rufo by, *inter alia*, giving him a negative performance appraisal and failing to give him a standard merit increase.

57. The PIP, by its own terms, was initiated in reaction to Rufo's protected activity, as confirmed by the October 28, 2017 Memorandum.

58. The performance appraisal treats Rufo's protected activity as a performance deficiency. It also raises other pretextual criticisms.

59. Aclara's placement of Rufo on the PIP, the negative performance appraisal, and failure to give a standard annual merit increase, are materially adverse employment actions, and were done in reaction for his engaging in protected activity.

60. Aclara's firing of Rufo was carried out in retaliation for his protected activity under Section 1981, including his EEO report and the filing of this lawsuit. This was a wanton and willful violation of Rufo's rights.

61. Aclara's retaliation is extreme and outrageous, and conducted with knowledge or reckless disregard for the fact that Rufo's activities were protected under Section 1981.

## VII. PRAYER FOR RELIEF

WHEREFORE, Rufo respectfully requests that this Court grant him relief in the form of a declaration that Aclara retaliated against him in violation of Section 1981, an injunction ordering Aclara to expunge the PIP and the performance appraisal from Rufo's disciplinary record with the company and reinstate his employment with a retroactive merit increase for 2018, back and front pay, compensatory and punitive damages, pre-judgment and post-judgment interest, attorney's fees and costs, and any and all other relief that the Court deems just and proper.

## VIII. JURY TRIAL DEMANDED

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Rufo demands a trial by jury.

Respectfully submitted,

Dated: June 11, 2018

By:   */s/*
Joshua Erlich (VA Bar No. 81298)

5262876

       The Erlich Law Office, PLLC
       2111 Wilson Blvd
       Suite 700
       Arlington, VA  22201
       Tel:    (703) 791-9087
       Fax:   (703) 351-9292
       Email: jerlich@erlichlawoffice.com


       Bruce C. Fox, Esquire (*pro hac vice*)
       bruce.fox@obermayer.com
       Andrew J. Horowitz, Esquire (*pro hac vice)*
       andrew.horowitz@obermayer.com
       OBERMAYER REBMANN MAXWELL &
       HIPPEL LLP
       500 Grant Street, Ste. 5240
       Pittsburgh, PA 15219
       412-566-1500 (p)
       412-281-1530 (f)

       *Counsel for Plaintiff Joseph Rufo*

5262876

## **CERTIFICATE OF SERVICE**

I hereby certify that the within First Amended Complaint has been served on counsel of record for all parties via the Court's CM/ECF filing system.

<u>/s/Joshua Erlich, Esq.</u>

5262876