# IN THE UNITED STATES DISTRICT COURT FOR
# THE EASTERN DISTRICT OF VIRGINIA
### ALEXANDRIA DIVISION

| | |
|---|---|
| JOSEPH RUFO, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )    Case No. 1:18-cv-00037 |
| | ) |
| ACLARA TECHNOLOGIES, LLC., | ) |
| | ) |
|     Defendant. | ) |

## DEFENDANT ACLARA TECHNOLOGIES, LLC'S RESPONSE IN OPPOSITION TO PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT

Defendant Aclara Technologies, LLC (hereinafter "Aclara" or "Defendant"), by counsel, states as follows for its Response in Opposition to Plaintiff Joseph Rufo's (hereinafter "Mr. Rufo" or "Plaintiff") Partial Motion for Summary Judgment:

**I.    Introduction**

In his Motion for Partial Summary Judgment, Mr. Rufo asks this Court to grant summary judgment on two of the three required elements of his retaliation claim pursuant to 42 U.S.C. § 1981, as well as two of Aclara's affirmative defenses. Aclara concedes that the filing of this lawsuit was protected activity, and that the elimination of his position constitutes adverse action. On the other hand, Mr. Rufo's EEO Sheet was not protected activity, as it was not oppositional activity (because Mr. Rufo presented it objectively and in equivocal terms), and because under settled law, no reasonable person could have concluded that its contents (purported disparate impact) violated § 1981, which only prohibits <u>intentional</u> discrimination.

Furthermore, Mr. Rufo asks this Court to invalidate two of Aclara's affirmative defenses: one asserting that vicarious liability is inappropriate, and the other asserting that punitive damages are inappropriate under *Kolstad v. American Dental Ass'n*. But in doing so, Mr. Rufo distorts

applicable law beyond all recognition, arguing in essence that punitive damages are inappropriate where employees engage in discrimination <u>despite</u> receiving training to the contrary. Of course, the U.S. Supreme Court said the opposite in *Kolstad*: employers cannot be held liable for punitive damages when they take good faith efforts to comply with anti-discrimination laws, even if their employees do not heed those efforts. Mr. Rufo's arguments are therefore baseless, and this Court should recognize that punitive damages are unrecoverable as a matter of law.

Ultimately, however, Mr. Rufo's Motion for Partial Summary Judgment – even if erroneously granted in its entirety – is for naught. As established in Aclara's Motion for Summary Judgment, Mr. Rufo cannot proceed to trial merely showing that he engaged in protected activity (filing this lawsuit) and subsequently experienced adverse employment actions. To the contrary, Mr. Rufo must come forward with affirmative evidence that Aclara intentionally retaliated against him <u>because of</u> his protected conduct. Because Mr. Rufo has not established and cannot establish a causal link between his only cognizable protected activity (filing this lawsuit) and any adverse action (for instance, the elimination of his position), his Motion for Partial Summary Judgment lacks both merit and purpose.[1]

## II. Responses to Mr. Rufo's Statement of Material Facts

1. Aclara disputes that Mr. Rufo "had no way to determine whether intentional discrimination was occurring," and further disputes that Mr. Rufo's motive in providing a spreadsheet (the "EEO Sheet") purporting to track certain disciplinary actions by race was to encourage Aclara to conduct a "proper investigation." Mr. Rufo's contemporaneous email

---

[1] Representative of his broader approach, in his introduction Mr. Rufo betrays the dearth of material fact underlying his motion by repeating unsupported, speculative, and immaterial allegations with no bearing on this case. For instance, Mr. Rufo says – without explaining how this proves or disproves any of his claims – that "The SGS Installers have a hard job: they are a low paid, high-turnover group, and that the hierarchy under which they work is dysfunctional—leading to inconsistent application of policies in the field across the various states where they work." Pl.'s Mem. ISO MSJ, at 4. Yet the record is devoid of competent evidence to this effect.

communications indicate that he did not believe the EEO Sheet was "very informative" because it contained incomplete data. Those communications also reflect that Mr. Rufo did not suggest that Aclara conduct an investigation. Deposition of Joseph Rufo ("Pl.'s Dep") Ex. 12, attached hereto as Ex. A, & Ex. 14, attached hereto as Ex. B.

2. Aclara disputes that Mr. Rufo's second listed fact is material to this dispute.

3. Aclara disputes that Mr. Rufo's third listed fact is material to this dispute.

4. Aclara disputes that Mr. Rufo's fourth listed fact is material to this dispute. Furthermore, Aclara states that the document on which Mr. Rufo relies speaks for itself.

5. Aclara disputes that Mr. Rufo's fifth listed fact is material to this dispute. Furthermore, Aclara states that the document on which Mr. Rufo relies speaks for itself.

6. Aclara states that the document on which Mr. Rufo relies in connection to his sixth listed fact speaks for itself.

7. Aclara disputes that Mr. Rufo's seventh listed fact is material to this dispute. Furthermore, Aclara states that the document on which Mr. Rufo relies speaks for itself.

8. The deposition excerpts on which Mr. Rufo relies in support of his eighth listed fact do not support his claim, but instead only discuss the individuals to whom his EEO Sheet was sent. Furthermore, Aclara disputes that human resources functions were "a large portion" of the Office Coordinator, or otherwise a permanent or material feature of that position. For instance, although for a time Mr. Rufo performed functions associated with SGS onboarding, those functions traditionally belonged to and were performed by Human Resources, and were never a formal component of Mr. Rufo's job duties. Deposition of Angela Hermannes ("Hermannes Dep."), attached hereto as Ex. C, at 49:22 – 53:20, 73:13

– 74:14; Def. Resp. to Pl.'s Interrogatory No. 19, attached as Ex. D; Deposition of Jill Mecey ("Mecey Dep"), attached hereto as Ex. E, at 235:8–236:5.

9. Aclara disputes that Mr. Rufo's ninth listed fact is material to this dispute, and furthermore states that the documents on which Mr. Rufo relies speak for themselves.

10. Aclara only disputes Mr. Rufo's tenth listed fact to the extent it states or implies that new employee onboarding (specifically, aspects of onboarding for SGS new hires) was ever a formal component of Mr. Rufo's job duties, which it was not. *Id.*

11. Mr. Rufo's eleventh listed fact appears to be two separate statements of fact erroneously joined as one. Aclara will address each in turn.

    a. Aclara does not contest the accuracy of the statement of fact contained in the first sentence of paragraph 11 of Mr. Rufo's statement of facts. However, Aclara disagrees that this fact is material to this dispute.

    b. Aclara states that the document on which Mr. Rufo relies to support his statement of fact with respect to his 2017 annual review speaks for itself.

12. Aclara states that the document on which Mr. Rufo relies to support his twelfth listed fact speaks for itself.

13. Aclara does not dispute Mr. Rufo's thirteenth listed fact.

14. Aclara does not dispute Mr. Rufo's fourteenth listed fact.

15.  Aclara does not dispute Mr. Rufo's fifteenth listed fact.

16. Aclara does not dispute Mr. Rufo's sixteenth listed fact.

17. Aclara does not dispute Mr. Rufo's seventeenth listed fact.

18. Aclara does not dispute Mr. Rufo's eighteenth listed fact.

19. Aclara does not dispute Mr. Rufo's nineteenth listed fact.

20. Aclara does not dispute Mr. Rufo's twentieth listed fact.

### III. Mr. Rufo's Motion for Partial Summary Judgment Should Be Denied, and Even if this Court Were Inclined to Grant it in Whole or in Part, Mr. Rufo's Claims Would Still Be Subject to Summary Judgment in Accordance with Aclara's Motion for Summary Judgment.

In his Motion for Summary Judgment, Mr. Rufo primarily argues that he is entitled to summary judgment on two of the three elements of his Section 1981 retaliation claim: protected activity and adverse action. Specifically, he argues that creating his EEO Sheet and filing the instant lawsuit were both protected activity. In addition, Mr. Rufo asserts a litany of alleged events constitute adverse employment actions: (a) being placed on a PIP; (b) the removal of certain human resources job responsibilities; (c) his 2017 performance review; (d) his failure to achieve a salary increase for 2017; and (d) his termination from employment.

Although Mr. Rufo is partially correct, as his filing of this lawsuit was protected activity and his position elimination was an adverse action, his arguments are of no effect as Mr. Rufo's claims are subject to summary judgment in Aclara's favor because he cannot establish any causal connection (among other critical defects). Just as crucially, the evidentiary record and applicable law establish that Mr. Rufo's EEO sheet was not protected activity. Considered fairly, the evidence in this case shows that Mr. Rufo based his claims on a fundamental misunderstanding of the applicable legal framework and, as a result, they are subject to summary judgment in Aclara's favor.

#### a. Aclara Does Not Contest that Filing the Instant Lawsuit Constituted Protected Activity Under Section 1981; However, Mr. Rufo's Claim Still Fails Because He Cannot Show a Causal Connection to Any Adverse Action.

As conceded in its Motion for Summary Judgment, Aclara does not contest that Mr. Rufo engaged in protected activity when he filed the instant lawsuit in January of this year. However,

5

as pointed out in that motion, Mr. Rufo's claim still fails because he cannot establish a causal connection between the filing of his lawsuit and any subsequent employment action. Indeed, the evidence shows that the complete reversion of SGS onboarding duties back to Human Resources (the alleged reduction in HR job duties that Mr. Rufo complains about) was long-planned and taken in the regular course of business (Mecey Dep. at 238:18 – 239:9; Hermannes Dep. at 49:22 – 53:20), and also that Mr. Rufo's performance evaluation (and his resulting ineligibility for a merit salary increase) was based on his performance during fiscal year 2017 (before this lawsuit was filed), as well as detailed managerial feedback unrelated to any protected activity or the filing of this lawsuit (Pl's Dep. Ex. 20 attached hereto as Ex. F and Pl's Dep. Ex. 22, attached hereto as Ex. G). Furthermore, the evidence is clear that Mr. Rufo was not separated from employment for reasons related in any way to protected activity,[2] but instead his position was eliminated (concurrently with a similar position in a different office) because it could no longer be justified from a business perspective (Mecey Dep. 294: 14 – 298:23, 301:9 -303:21).

      **b.**      **Mr. Rufo's EEO Sheet Was Not Protected Activity Under Section 1981.**

In his Motion for Summary Judgment, Mr. Rufo asks this Court to rule that he engaged in protected activity when he compiled and provided his EEO Sheet. Mr. Rufo is mistaken, and for the reasons established in Aclara's Motion for Summary Judgment, the contrary is true: Mr. Rufo did not have a reasonable belief that intentional discrimination was occurring and, furthermore, he did not engage in oppositional activity.

      **i.**      **Mr. Rufo's EEO Sheet Does Not Constitute Protected Activity Because He Lacked an Objectively Reasonable Belief that It Showed Intentional Discrimination.**

---

[2] Additionally, the lengthy (five month) time period between the filing of this lawsuit and the elimination of Mr. Rufo's position underscores the lack of any causal connection between those two events. *Pascual v. Lowe's Home Centers, Inc*., 193 F. App'x. 229, 233 (4th Cir. 2006) (stating a three to four month period was too long of a period to establish a causal connection). Moreover, that temporal duration precludes any inference of causation from temporal proximity alone. *Id.*

Protected activity in Section 1981 retaliation claims is governed by the same substantive analysis applied in Title VII retaliation claims: to constitute protected activity, an employee must have an objectively reasonable belief that a violation of Section 1981 happened or was in progress. *See, e.g. Strothers v. City of Laurel, Md.*, 895 F.3d 317, 328 (4th Cir. 2018) (quoting *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 281 (4th Cir. 2015); *Boyer-Liberto*, 786 F.3d at 282; *Jimenez v. Wellstar Health Sys.*, 596 F.3d 1304, 1311 (11th Cir. 2010) (stating that "[a]s with other statutory retaliation claims, [a § 1981 retaliation claim] requires that the protected activity involve the assertion of rights encompassed by the statute") (internal quotations omitted). "To warrant protection, the employee's perception of a violation must be 'objectively reasonable' under the circumstances known to [him]." *Strothers*, *supra* at 328 (quoting *Boyer-Liberto*, 786 F.3d at 281).

What the reasonable belief requirement means, as a practical matter, is that Mr. Rufo must provide evidence that he had a reasonable belief that all of the elements of a § 1981 discrimination claim were satisfied when he provided his EEO Sheet; otherwise, he did not engage in protected activity with respect to the same. *See, e.g. Strothers*, 895 F.3d at 328 (stating that "because [the plaintiff] is bringing a retaliation claim, she must show that her belief that these elements were satisfied was reasonable); *Clover v. Total System Serv.'s, Inc.*, 176 F.3d 1346, 1351 (11th Cir. 1999) (stating that "objective reasonableness of an employee's belief that her employer has engaged in an unlawful employment practice must be measured against existing substantive law"); *Harper v. Blockbuster Entertainment Corp.*, 139 F.3d 1385, 1388 (11th Cir. 1998) (explaining that failure to charge the employee who opposes an employment practice with substantive knowledge of the law 'would eviscerate the objective component of our reasonableness inquiry"). Of course, this does not mean that Mr. Rufo must affirmatively prove that his EEO Sheet reflected a *prima facie* § 1981 discrimination claim. Rather, it means that Mr. Rufo must show that a reasonable

7

person could believe that the purported disparate treatment illustrated by the EEO Sheet violated § 1981. Mr. Rufo cannot make that showing and, therefore, his EEO Sheet was not protected activity under § 1981.

In this case, Mr. Rufo argues that he engaged in protected activity by "reporting a drastic disparate impact." However, it is axiomatic that § 1981 only prohibits intentional discrimination, and mere disparate impact – which Mr. Rufo claimed to identify in his EEO Sheet – is excluded from that definition. *See, e.g. General Bldg. Contractors Ass'n, Inc. v. Penn.*, 458 U.S. 375, 391 (1982); *see also Mozee v. American Commercial Marine Serv. Co.*, 940 F.2d 1036, 1053 (7th Cir. 1991) (under § 1981, proof of disparate impact of employer's policies on minority employees does not show liability absent intentional discrimination); *Taylor v. Millenium Corp.*, No. 1:15-cv-1046, 2016 WL 927185, at *9 (E.D. Va. Mar. 4, 2016) (stating that "a disparate impact claim is not viable under § 1981"). Therefore, because protected activity is viewed through the lens of substantive law, Mr. Rufo's EEO Sheet cannot possibly constitute protected activity, as no reasonable person could conclude that disparate impact is prohibited by § 1981.

In his Motion for Partial Summary Judgment, Mr. Rufo attempts to circumvent this requirement by arguing that, because he "did not interact directly with the targeted employees or their supervisors, he had no way to determine whether intentional discrimination was occurring by himself, but he wanted to alert the company so that it could conduct a proper investigation."[3] Pl.'s Mem. ISO MSJ, at 68. Not only does this admission fail to advance his arguments, but it also underscores that Mr. Rufo's EEO Sheet was not protected activity.

Indeed, Mr. Rufo is charged with substantive legal knowledge, so he must demonstrate that, when he presented his EEO sheet, he reasonably believed (in light of that legal knowledge)

---

[3] In his Motion, Mr. Rufo also argues that the manner by which he provided the EEO Sheet to Aclara was reasonable. The manner by which Mr. Rufo communicated his EEO Sheet, however, is irrelevant.

that the elements of a Section 1981 discrimination claim were satisfied. Because Section 1981 only prohibits intentional discrimination, a reasonable belief necessarily includes the belief that intentional discrimination was ongoing. So when Mr. Rufo admits that "he had no way to determine whether intentional discrimination was occurring," he is also admitting that he lacked an objectively reasonable belief that a violation of Section 1981 was ongoing. *See, e.g. Harper*, 139 F.3d at 1388 (explaining that failure to charge the employee who opposes an employment practice with substantive knowledge of the law "would eviscerate the objective component of our reasonableness inquiry"). For that reason, this Court should hold that Mr. Rufo's EEO Sheet, as well as his actions surrounding it, were not protected activity.

        **ii.**    **Mr. Rufo Did Not Engage In Protected Activity in Connection With His EEO Sheet Because He Did Not Engage In Oppositional Activity, But Instead Only Reported The Existence of Alleged Disparate Treatment in Equivocal Terms.**

In his Motion for Partial Summary Judgment, Mr. Rufo states – in conclusory fashion – that he engaged in oppositional activity through his EEO Sheet; however, the evidence in this case, as well as Mr. Rufo's arguments, prove otherwise. Indeed, Mr. Rufo is clear that he did not stand in opposition to any purported discrimination, but merely reported its <u>potential</u> existence in objective terms to provide Aclara "an opportunity to address any potential discrimination before it resulted in litigation." Pl.'s Mem. ISO MSJ, at 11. This falls dramatically short of the applicable legal requirements to be protected activity under the law.

As pointed out in Aclara's Motion for Summary Judgment, "opposition" to unlawful discrimination cannot be equivocal, but instead plaintiffs "must have stood in opposition to it—not just objectively reported its existence or attempted to serve as an intermediary." *Moore v. City of Philadelphia*, 461 F.3d 331, 350 (3rd Cir. 2006). In contrast to this standard, Mr. Rufo instead objectively reported the existence of what he considered <u>potential</u> disparate impact. In this regard,

9

Mr. Rufo's deposition testimony is instructive. Asked to describe a phone conversation between himself and Lyn Salvo regarding the EEO Sheet, Mr. Rufo testified that:

> I told her that the vast majority of the disciplinary action that comes across me for tracking involves employees who self-identify as black or multiracial, and that it seems to be indicative of potential systemic discrimination.

Pl.'s Dep. attached hereto as Ex. H, at 121:4-8, . Furthermore, Mr. Rufo acknowledged at the same time that the EEO Sheet:

> isn't very informative at the moment because we lack sufficient amounts of data to give this relevancy, however, as time goes on this analysis becomes less skewed and more representative of how we are tracking in relation to how *we should be tracking*. Please disregard the "For future tracking" at the bottom, as this is information I'll use going forward to identify where possible discrepancies are most blatantly and frequently occurring (which could help us identify how/where to fix any issues that might be trending.)

Ex. A.

This testimony, bolstered by the arguments presented in Mr. Rufo's Motion for Partial Summary Judgment, reflects that Mr. Rufo merely reported the existence of <u>potential</u> disparate treatment based on incomplete data. Furthermore, it shows that Mr. Rufo did not "stand in opposition" to any putative disparate treatment, but instead that he gave "Lyn [Salvo] a tool she could use to identify any issues going forward." Ex. B.

Mr. Rufo's testimony and prior written communications are clear: in creating and disseminating the EEO Sheet, Mr. Rufo did not engage in oppositional activity, but instead merely identified, in equivocal terms, what he believed could turn into potential disparate treatment with more data. Therefore, Mr. Rufo may not rely on his EEO Sheet to underpin his retaliation claim.

    **c.**  **Even Though Some of the Events on Which Mr. Rufo Relies Meet the Definition of Adverse Action for Purposes of His Section 1981 Retaliation Claim, Mr. Rufo's Claim Still Fails Because He Cannot Show a Causal Connection to Any Protected Activity.**

  In his Motion for Summary Judgment, Mr. Rufo asks this Court to deem the following events adverse employment actions as defined by Section 1981: (a) his PIP; (b) the removal of SGS onboarding responsibilities; (c) his 2017 job performance review; (d) his ineligibility for a merit salary increase for 2017; and (e) the termination of his employment. Although Aclara recognizes that applicable law suggests that most of these events (but not the removal of SGS onboarding responsibilities) constitute adverse actions under the lax standards imposed in Section 1981 retaliation claims, Mr. Rufo's claim still cannot proceed. Indeed, as established in Aclara's Motion for Summary Judgment, Mr. Rufo cannot establish a causal connection between any of those events and protected activity; therefore, this Court should grant summary judgment in Aclara's favor without regard to the disposition of the instant motion.

    **i.**  **Mr. Rufo's PIP, 2017 Job Performance Review, and 2017 Ineligibility for a Merit Salary Increase May Constitute Adverse Employment Actions Under Applicable Law, But These Events Cannot Be Casually Connected to Any Actionable Protected Activity and, Therefore, Cannot Support Mr. Rufo's Claims**.

  At the outset, Aclara recognizes that, standing alone, neither Mr. Rufo's PIP nor his 2017 job performance review are adverse employment actions as that term is defined in Section 1981 retaliation cases. But because Aclara acknowledges that Mr. Rufo's 2017 ineligibility for a merit salary increase was based at least in part on his 2017 job performance review, which was in turn impacted by his 2017 PIP, Aclara does not contest that those three events (PIP; 2017 performance review; 2017 ineligibility for a merit increase) are sufficiently interrelated that the weight of authority deems each of them an adverse action. *See, e.g. Thompson v. PEPCO*, 312 F.3d 645,

11

312 F.3d 645, 652 (4th Cir. 2002) (recognizing that poor performance ratings, when subsequently used to impact terms and conditions of employment, become actionable).

However, this same interrelation is fatal to Mr. Rufo's claims. As described above and in Aclara's Motion for Summary Judgment, Mr. Rufo's EEO Sheet (created and provided to Aclara during 2017) is not protected activity. Therefore, the only cognizable protected activity in this case is the filing of the instant lawsuit (during January of 2018). Because Mr. Rufo's PIP, his 2017 job performance review, and his 2017 ineligibility for a merit salary increase each relate exclusively to events (i.e., Mr. Rufo's job performance) <u>prior to the filing of this lawsuit</u>, no causal connection can be established.

    ii. **The Reversion of SGS Onboarding Duties to Human Resources Was Not An Adverse Employment Action, and Cannot Be Causally Connected to Any Protected Activity in this Case**.

In his Motion for Partial Summary Judgment, Mr. Rufo casts the reversion of SGS onboarding duties to Human Resources as an adverse employment action largely because he enjoyed those duties and they were a component of his ambitions to pursue a career in human resources. However, Mr. Rufo is incorrect: SGS onboarding duties never became a permanent feature of Mr. Rufo's job responsibilities, but were instead a temporary addition.

In his Motion, Mr. Rufo makes a critical distinction: he does not allege that Aclara modified his job duties to take away broad-based human resources functions, but instead only that Aclara shifted away the responsibility for tracking discipline for SGS installers and also removing his onboarding responsibilities for the same group. *See* Pl.'s Mem. in Supp. MSJ, at 16. However, neither of these tasks were ever permanent, material features of Mr. Rufo's position.

Rather, Mr. Rufo's position was administrative in nature. Specifically, Mr. Rufo was hired to provide general administrative support, such as ordering supplies, meeting coordination,

ordering lunches for meetings, sending and receiving mail, helping with the office move, and supporting the Vice President of SGS and the Facilities and EHS Manager for the Virginia site as needed. Pl's Dep. at 42:25-43:14; Pl.'s Dep. Ex. 4, attached hereto as Ex. I; Mecey Dep at 35:24–36:10, 39:25–40:14. And although his initial job description reflected some human resources responsibilities in very broad terms, the evidentiary record is clear that Mr. Rufo was not hired to assist with either SGS onboarding or track disciplinary metrics for SGS installers as he was not in Human Resources.

Indeed, the record shows that Mr. Rufo did not track disciplinary metrics for SGS installers until in or around June of 2017, when Human Resources managers Gina Petrella and Lyn Salvo asked Mr. Rufo to maintain a spreadsheet tracking discipline given to certain SGS workers. Pl.'s Dep. at 59:23 – 72:13; Pl. Dep. Ex. 5, attached hereto as Ex. J.

Furthermore, the uncontroverted evidence demonstrates that the SGS onboarding responsibilities on which Mr. Rufo focuses were neither permanent nor material functions of his position. Indeed, SGS onboarding was a Human Resources function and was never a formal component of Mr. Rufo's job duties as he was in Administration. Hermannes Dep. at 49:22 – 53:20, 73:13 – 74:14; Ex. D; Mecey Dep. at 235:8–236:5. And although Mr. Rufo performed such duties on an *ad hoc* basis, Human Resources began shifting SGS onboarding responsibilities back into the Human Resources Department during the fall of 2017. This long-planned decision was made by HR Service Center Employee Chrissy Martel and Angela Hermannes. Mecey Dep. at 238:18 – 239:9; Hermannes Dep. at 49:22 – 53:20; Ex. D. Notably, Mr. Rufo clarified in his deposition that SGS onboarding responsibilities are the only critical job duties that he believes were taken away from him in retaliation for protected activity. Pl.'s Dep. at 200:10-13.

Because the record shows that neither SGS onboarding nor the tracking of disciplinary actions for SGS installers were permanent or material aspects of Mr. Rufo's job duties, their removal cannot be construed as adverse employment actions. *See, e.g. Davis v. Town of Lake Park, FL*, 245 F.3d 1232 (11th Cir. 2001) (rejecting claim of adverse action based on temporary job duties).

Additionally, even if this Court were inclined to construe the reversion of SGS onboarding duties to Human Resources as an adverse action – which it should not – Mr. Rufo cannot establish a causal connection between the reversion of SGS onboarding duties to Human Resources and the filing of the instant lawsuit (which is the only cognizable protected activity in this case). As detailed herein and in Aclara's Motion for Summary Judgment, the reversion of SGS onboarding duties to Human Resources was long-planned and taken in the regular course of business before the lawsuit was filed or when anyone at Aclara knew about the lawsuit. D.'s Mem. in Supp. MSJ, at 17 (citing Mecey Dep. at 238:18 – 239:9; Hermannes Dep. at 49:22 – 53:20). Therefore, Mr. Rufo cannot establish any causal connection in this regard.

### iii. Aclara Does Not Contest that the Elimination of Mr. Rufo's Position is an Adverse Action; However, the Evidence Shows That Aclara's Elimination Decision Was Unrelated to Any Protected Activity.

The law is clear that an involuntary termination of employment – even under the circumstances shown here – constitute an adverse employment action pursuant to Section 1981. However, this legal reality does not advance Mr. Rufo's claim. As demonstrated in Aclara's Motion for Summary Judgment, Mr. Rufo has presented zero evidence – other than his own speculation – that the elimination of his position (concurrent with the elimination of a similar position in a different office) was in any way related to any protected activity. (Mecey Dep. 294:

14 – 298:23, 301:9 -303:21). Therefore, Mr. Rufo's claims are subject to summary judgment in Aclara's favor.

### IV. Mr. Rufo Cannot Avoid the Application of Aclara's Affirmative Defenses by Distorting Applicable Law and Ignoring the Evidentiary Record.

#### a. Aclara Is Entitled to Proceed on Its Eight Affirmative Defense Invoking the Protections of *Kolstad v. American Dental Ass'n*.

In its Motion for Summary Judgment, Mr. Rufo argues that this Court should grant summary judgment in his favor on Aclara's eighth affirmative defense, which invokes the protections of *Kolstad v. American Dental Ass'n.* as follows:

> Defendant cannot be vicariously liable for punitive damages in light of its good faith efforts to comply with the anti-retaliation statute at issue in this case.

*See also Kolstad*, 527 U.S. 526 (1999).

During discovery, Aclara proffered uncontroverted evidence of its entitlement to rely on this affirmative defense. As illustrated by Aclara's response to Interrogatory No. 27, attached hereto as Exhibit I, Aclara implemented a Code of Business Conduct with strong anti-discrimination and anti-retaliation provisions, which it required all relevant employees to review, acknowledge, and abide by, and furthermore required those employees to undergo ethics and other related training. In response, even Mr. Rufo acknowledges that the employees who had some involvement in the issues raised by Mr. Rufo (including Jill Mecey, Lyn Salvo, Gina Petrella, and Michael Garcia) were aware of their obligations under Section 1981. This all illustrates Aclara's good faith efforts to comply with that law. Pl.'s Mem. in Supp. MSJ, at 21.

In his Motion, however, Mr. Rufo argues that the relevant decision makers retaliated against him despite receiving anti-harassment and anti-discrimination training; therefore, Aclara cannot avoid punitive damages. But this argument directly contradicts *Kolstad*, which underscores that employers like Aclara, which implement anti-discrimination and anti-retaliation policies,

cannot then be held liable for punitive damages if their employees ignore those policies. Indeed, the Supreme Court in *Kolstad* held that "[t]he Court therefore agrees that, in the punitive damages context, an employer may not be vicariously liable for the discriminatory employment decisions of managerial agents where these decisions are contrary to the employer's good faith efforts to comply with Title VII." Pp. 2126-2129. As a result, Mr. Rufo's arguments with respect to punitive damages belie a misunderstanding of *Kolstad*, so they must be disregarded.

Moreover, and in contrast to Mr. Rufo's ill-founded positions, Aclara correctly pointed out in its Motion for Summary Judgment that punitive damages are inappropriate in this case. Indeed, because Mr. Rufo has not produced and cannot produce evidence that Aclara took any action in the face of perceived risk that its conduct was illegal, Mr. Rufo cannot recover punitive damages and Aclara's Motion for Summary Judgment should be granted.

### b. On the Issue of Punitive Damages, Aclara is Entitled to Proceed on its Fourth Affirmative Defense and Establish that Any Violations of Section 1981 – of Which There Were None – Were Contrary to Aclara's Policies, Thereby Rebutting Mr. Rufo's Efforts to Establish Vicarious Liability.

Mr. Rufo also proffers the related argument that Aclara should not be permitted to present evidence at trial in support of its fourth affirmative defense, which states as follows:

> If any improper, illegal, or retaliatory act was taken by any Defendant employee against Plaintiff, it was outside the course and scope of that employee's employment, contrary to Defendant's policies, and was not ratified, confirmed, or approved by Defendant. Thus, any such actions cannot be attributed or imputed to Defendant.

Mr. Rufo primarily argues that, because Jill Mecey, Lyn Salvo, Gina Petrella, and Michael Garcia were managerial employees acting within the scope of their employment at all relevant times, Aclara is vicariously liable for their conduct. Regarding the merits of Mr. Rufo's claim (as opposed to the issue of punitive damages), Aclara does not intend to contest vicarious liability during the liability phase of trial. However, as argued above and in its Motion for Summary

Judgment, Aclara cannot and should not be held vicariously liable on the issue of punitive damages. As a result, this Court should deny Mr. Rufo's Motion for Partial Summary Judgment on the issue of Aclara's affirmative defenses.

## V. Conclusion

For the reasons stated above and Aclara's Motion for Summary Judgment and memorandum in support thereof, as well as those that may be stated during oral argument, Aclara requests that Mr. Rufo's Motion for Partial Summary Judgment be denied, and that Aclara's Motion for Summary Judgment be granted in full.

Dated: October 5, 2018

Respectfully Submitted,

**Aclara Technologies, LLC**

By /s/ *J. Clay Rollins*
J. Clay Rollins, Esquire
Virginia State Bar Number 84382
clay.rollins@ogletreedeakins.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
901 East Byrd Street, Suite 1300
Riverfront Plaza, West Tower
Richmond, VA 23219
Tel.: (804) 663-2330
Fax: (855) 843-1809

Heidi Kuns Durr, Esquire (*pro hac vice*)
heidi.durr@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
7700 Bonhomme Avenue, Suite 650
St. Louis, MO 63015
Tel.: (314) 802-3935

*Counsel for Defendant*

## Certificate of Service

I hereby certify that on this 5th day of October 2018, I electronically filed the foregoing with the clerk of the court using the CM/ECF system, which will send notification of such filing to counsel for Plaintiff:

Joshua H. Erlich, Esquire
Virginia State Bar No.: 81298
The Erlich Law Office PLLC
2111 Wilson Blvd., Suite 700
Arlington, VA 22201
Voice: (703) 791-9087
Fax: (703) 351-9292
jerlich@erlichlawoffice.com

Bruce Carl Fox, Esquire (*pro hac vice*)
Penn. Bar No.: 42576
Andrew Jack Horowitz (*pro hac vice*)
Penn. Bar No.: 311949
Obermayer Rebmann Maxwell & Hippel, LLP
BNY Mellon Center, Suite 5240
500 Grant Street
Pittsburgh, PA 15219
andrew.horowitz@obermayer.com
bruce.fox@obermayer.com

*Counsel for Plaintiff*

**Aclara Technologies, LLC**

By  /s/  *J. Clay Rollins*
J. Clay Rollins, Esquire
Virginia State Bar Number 84382
clay.rollins@ogletreedeakins.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
901 East Byrd Street, Suite 1300
Riverfront Plaza, West Tower
Richmond, VA 23219
Tel.:   (804) 663-2330
Fax:   (855) 843-1809

*Counsel for Defendant*

35825535.2