## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA, ALEXANDRIA DIVISION

| | |
|---|---|
| **JOSEPH RUFO,** | ) |
| | ) |
| | )   **Case 1:18-cv-37-LMB-MSN** |
| **Plaintiff,** | ) |
| | ) |
| **vs.** | ) |
| | )   **JURY TRIAL DEMANDED** |
| **ACLARA TECHNOLOGIES, LLC,** | ) |
| | ) |
| **Defendant.** | ) |
| | )   *ELECTRONICALLY FILED* |
| | ) |

## JOINT PROPOSED JURY INSTRUCTIONS
### *(with Agreed, Disputed, and Partially Disputed Instructions)*

## PROPOSED INSTRUCTION NO. 1

*Section 1981 Introductory Instruction (**Partially Disputed**)*[1]

In this case the Plaintiff Joseph Rufo has made a claim under 42 U.S.C. § 1981, a Federal Civil Rights statute that prohibits discrimination against an employee because of the person's race. Section 1981 also prohibits employers from retaliating against an employee for participating in any manner in a charge of discrimination.

The purpose of Section 1981's prohibition on retaliation is to protect Section 1981's prohibition on intentional discrimination in employment. **[If employees are afraid of reprisal by their employers for reporting discrimination, then more illegal discrimination is likely to occur.[2]]**

You must determine whether Defendant Aclara Technologies, LLC retaliated against Mr. Rufo for engaging in activity protected by Section 1981. If you find that it did, you must assess compensatory damages in Mr. Rufo's favor. You are not here to determine whether Aclara engaged in discrimination.

Aclara denies that Mr. Rufo was retaliated against in any way.

I will now instruct you more fully on the issues you must address in this case.

<u>**Plaintiff's Position:**</u>
- **The bracketed and emboldened text is proposed by Plaintiff and objected to by Defendant. Plaintiff asserts that this test is necessary to aid the jury in understanding the importance of anti-retaliation statutes and is a correct statement of law.**

**Defendant's Position:**
- **Defendant objects that such language is not standard in this context, and if used, would inflame the passions of the jury and create the false impression that this case presents underlying illegal discrimination.**

---

[1] Adapted from Model Civ. Jury Instr. 3d Cir. 6.0 (2018).
[2] See *Burke v. Anne Arundel Medical Center*, 2015 WL 2227914 at *3 (D. Md. May 8, 2015) (citing *Robinson v. Shell Oil Co*., 519 U.S. 337, 346 (1997).

## PROPOSED INSTRUCTION NO. 2

*Elements of a Retaliation Claim under Section 1981 (**Agreed**)*[3]

To prevail on this claim against Aclara, Mr. Rufo must prove each of the following by a preponderance of the evidence:

First: that Rufo engaged in protected activity.

Second: that Aclara took an action or actions against Rufo that a reasonable employee would have found materially adverse; and.

Third: Aclara would not have taken some or all of these actions if not for Rufo's protected activity.

---

[3] Adapted from Model Employment Law Jury Instructions, Faculty of Federal Advocates, *Ad Hoc Committee*, September 2013, available at http://www.facultyfederaladvocates.org/employment-jury-instructions/.

## PROPOSED INSTRUCTION NO. 3(a)

*Protected Activity (**Plaintiff's Proposed Instruction - Partially Disputed**)*[4]

Section 1981 protects employees who make a claim of racial discrimination or retaliation, or participate in any manner in a claim of discrimination or retaliation, or in any related investigation or proceeding.

In this case, Mr. Rufo asserts that he engaged in the following protected activities: that he began tracking what he described as the proportional amount of discipline issued to certain SGS Installers by race, and that he filed this lawsuit alleging retaliation for engaging in protected activity.

Mr. Rufo does not have to prove that Aclara actually engaged in discrimination against the SGS Installers. That is not at issue in this case and not for you to decide or consider. Rather, Mr. Rufo's analysis is protected activity if you find that he had an objectively reasonable, good faith belief that someone else's right to be free from intentional racial discrimination **[may have been]** violated, and he communicated that belief with the intent to oppose discrimination by Aclara.[5]

**[Mr. Rufo need not affirmatively prove that his spreadsheet reflected actual discrimination.  Rather, Mr. Rufo must show that a reasonable person could believe that his spreadsheet showed discrimination.]**[6]

---

[4] Adapted from Model Employment Law Jury Instructions, Faculty of Federal Advocates, *Ad Hoc Committee*, September 2013, available at http://www.facultyfederaladvocates.org/employment-jury-instructions/; See also *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002).

[5] *Clark County v. Breeden*, 532 U.S. 268, 271 (2001); *Jordan v. Alternative Res. Corp.*, 458 F.3d 332, 341 (4th Cir. 2006).

[6] *General Bldg. Contractors Ass'n, Inc. v. Penn.*, 458 U.S. 375, 391 (1982); *Mozee v. American Commercial Marine Serv. Co.*, 940 F.2d 1036, 1053 (7th Cir. 1991); *Strothers v. City of Laurel, Md.*, 895 F.3d 317, 328 (4th Cir. 2018) (quoting *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 281 (4th Cir. 2015)); *Clover v. Total System Serv.'s, Inc.*, 176 F.3d 1346, 1351 (11th Cir. 1999); *Taylor v. Millenium Corp.*, No. 1:15-cv-1046, 2016 WL 927185, at *9 (E.D. Va. Mar. 4, 2016).

Furthermore, Mr. Rufo must prove that he opposed what he reasonably believed to be intentional discrimination.  Opposition to unlawful discrimination cannot be equivocal, but instead Mr. Rufo must have stood in opposition to it – not just objectively reported its existence or attempted to serve as an intermediary.[7]

I have already ruled that Mr. Rufo's filing of this lawsuit is protected activity and you should treat it as such for the purposes of your deliberations.

**NOTE:**

**<u>Plaintiff's Position: "May Have Been"</u>**

- **Plaintiff asserts that Mr. Rufo must prove that he had an objectively reasonable, good faith belief that someone else's right to be free from intentional racial discrimination *may have been* violated. A retaliation plaintiff need not prove the merits of the underlying discrimination that he is reporting; rather, he must merely show he was acting on a good faith, objectively reasonable belief that a violation may be occurring. *Clark County v. Breeden*, 532 U.S. 268, 271 (2001); *Jordan v. Alternative Res. Corp.*, 458 F.3d 332, 341 (4th Cir. 2006). "[Plaintiffs] are not required to collect enough evidence of discrimination to put the discrimination case before a jury before they blow the whistle." *Moore v. City of Philadelphia*, 461 F.3d 331, 345 (3d Cir. 2006). In an *en banc* opinion, the U.S. Court of Appeals for the Fourth Circuit explained that this standard sets an intentionally low bar "because it protects an employee… who promptly speaks up…., rather than remaining silent and thereby allowing discriminatory conduct to continue unchallenged, while forfeiting any judicial remedy he might have." *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 284 (4th Cir. 2015).**

**<u>Defendant's Position: "May Have Been"</u>**

- **Defendant asserts that Mr. Rufo must prove that he had an objectively reasonable good faith belief that someone else's right to be free from intentional racial discrimination <u>was underway or imminent</u>.  What Mr.**

---

[7] *Moore v. City of Philadelphia*, 461 F.3d 331, 350 (3rd Cir. 2006).

Rufo urges is a distortion of the applicable framework.  Mr. Rufo  need not merely prove that he had an objectively reasonable belief that Section 1981 discrimination <u>might have been occurring</u>, but rather an objectively reasonable believe that Section 1981 discrimination <u>was underway</u> or imminent.  *See, e.g. Strothers v. City of Laurel, MD*, 895 F.3d 317 (4th Cir. 2018) (stating that the protected activity inquiry is "whether the circumstances known to [the plaintiff] at the time of [his] complaint support a reasonable belief that a hostile work environment <u>existed or was in progress</u>") (emphasis added).  To hold otherwise would eviscerate the objectivity requirement, as well as the requirement that the reasonable belief standard is based on the facts Mr. Rufo possessed at the time.

## Plaintiff's Position: Bracketed Paragraph Regarding Reasonable Belief

- Plaintiff asserts that this paragraph is a simple and correct statement of the law regarding reasonable belief, as more fully argued in Plaintiff's position on Defendant's proposed instruction 3(b).

## Defendant's Position: Bracketed Paragraph Regarding Reasonable Belief

- Furthermore, Defendant objects to Mr. Rufo's bracketed and bolded paragraph regarding oppositional activity because it is neither neutral nor accurate, as it omits focus on the objectivity requirement, omits that Section 1981 only prohibits intentional discrimination, and omits that the objectivity requirement requires that Mr. Rufo's belief be measured against substantive law.  In this way, Mr. Rufo's proposed language presents an incomplete picture of applicable law.

## PROPOSED INSTRUCTION NO. 3(b)

### Protected Activity (**Defendant's Proposed Instruction - Partially Disputed**)[8]

Section 1981 protects employees who make a claim of racial discrimination or retaliation, or participate in any manner in a claim of discrimination or retaliation, or in any related investigation or proceeding.

In this case, Mr. Rufo asserts that he engaged in the following protected activities: that he began tracking what he described as the proportional amount of discipline issued to certain SGS Installers by race, and that he filed this lawsuit alleging retaliation for engaging in protected activity.

Mr. Rufo does not have to prove that Aclara actually engaged in discrimination against the SGS Installers. That is not at issue in this case and not for you to decide or consider. Rather, Mr. Rufo's analysis is protected activity if you find that he had an objectively reasonable, good faith belief that someone else's right to be free from intentional racial discrimination **[was]** violated, and he communicated that belief with the intent to oppose discrimination by Aclara.[9]

**[The objective reasonableness requirement means that Plaintiff's belief that his EEO Sheet reflected a violation of Section 1981 must be measured against existing substantive law.  This does not mean that Mr. Rufo must affirmatively prove that his EEO Sheet reflected an actual Section 1981 violation.  Rather, it means that Mr. Rufo must show that a reasonable person could believe that his spreadsheet showed violations of Section 1981.  Section 1981 prohibits only <u>intentional discrimination</u>, but not disparate impact.[10] ]**

---

[8] Adapted from Model Employment Law Jury Instructions, Faculty of Federal Advocates, *Ad Hoc Committee*, September 2013, available at http://www.facultyfederaladvocates.org/employment-jury-instructions/; See also *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002).

[9] *Clark County v. Breeden*, 532 U.S. 268, 271 (2001); *Jordan v. Alternative Res. Corp.*, 458 F.3d 332, 341 (4th Cir. 2006).

[10] *General Bldg. Contractors Ass'n, Inc. v. Penn.*, 458 U.S. 375, 391 (1982); *Mozee v. American Commercial Marine Serv. Co.*, 940 F.2d 1036, 1053 (7th Cir. 1991); *Strothers v. City of Laurel, Md.*, 895 F.3d 317, 328 (4th Cir. 2018) (quoting *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 281 (4th Cir. 2015)); *Clover v. Total System Serv. 's, Inc.*, 176 F.3d 1346, 1351 (11th Cir.

Furthermore, Mr. Rufo must prove that he opposed what he reasonably believed to be intentional discrimination.  Opposition to unlawful discrimination cannot be equivocal [**or informational**], but instead Mr. Rufo must have stood in opposition to it – not just objectively reported its existence or attempted to serve as an intermediary.[11]

I have already ruled that Mr. Rufo's filing of this lawsuit is protected activity and you should treat it as such for the purposes of your deliberations.

**NOTE:**

**Plaintiff's Position: Bracketed Paragraph Regarding Objective Reasonableness**

- **Plaintiff objects, and asserts that this language (drafted wholesale by Defendant) is not neutral and advocates Defendant's position. Plaintiff further objects that this language is overly legalistic and therefore likely to confuse the jury. Plaintiff counter-proposes the bracketed and emboldened language in its Proposed Instruction 3(a), which is designed to distill Defendant's proposed language to plain-English.**

**Defendant's Position: Bracketed Paragraph Regarding Objective Reasonableness**

- **Defendant proposes the above-bracketed language regarding objective reasonableness. Defendant asserts that this information is necessary to fully and accurately explain the law applicable to this case; in particular, the objective reasonableness requirement, which is a central issue.    Furthermore, Mr. Rufo's proposed "plain-English" counterproposal (reflected by the bracketed text in Proposed Instruction 3(a)) is neither neutral nor accurate, as it omits focus on the objectivity requirement, omits that Section 1981 only prohibits intentional discrimination, and omits that the objectivity requirement**

---

1999); *Taylor v. Millenium Corp.*, No. 1:15-cv-1046, 2016 WL 927185, at *9 (E.D. Va. Mar. 4, 2016).

[11] *Moore v. City of Philadelphia*, 461 F.3d 331, 350 (3rd Cir. 2006).

requires that Mr. Rufo's belief be measured against substantive law.  In this way, Mr. Rufo's proposed "plain-English" counterproposal presents an incomplete picture of applicable law and, in doing so, misleads the jury.

**Plaintiff's Position: Inclusion of "Or Informational"**

- Plaintiff further objects to the bracketed and emboldened words "or informational" in the paragraph regarding opposition, on the basis that this language is not supported by or quoted from *Moore v. City of Philadelphia*, 461 F.3d 331, 350 (3rd Cir. 2006), as cited by Defendant. Further, the rest of the paragraph adequately conveys the law on this point.

**Defendant's Position: Inclusion of "Or Informational"**

- In response, Defendant urges that the inclusion of "or informational" is appropriate, as it paraphrases in plain English what the applicable case law specifies: that mere equivocal or objective reporting is not oppositional.  *See, e.g. Moore v. City of Philadelphia*, 461 F.3d 331, 350 (3rd Cir. 2006).   Moreover, Defendant selected the word "informational" to reflect the Court's commentary at the parties' October 19, 2018 hearing.

# PROPOSED INSTRUCTION NO. 4

*Materially Adverse Action (**Agreed**)*[12]

A "materially adverse" action is any action by Aclara that is likely to discourage a reasonable worker in Mr. Rufo's position from exercising his rights under § 1981.

I have already ruled that the following actions by Aclara toward Mr. Rufo were materially adverse:

1. Placing Mr. Rufo on a written warning and performance improvement plan;
2. Giving Mr. Rufo a negative performance review;
3. Denying Mr. Rufo a merit salary increase; and
4. Terminating Mr. Rufo's employment.

You should consider these actions by Aclara to be materially adverse for the purposes of your deliberations.

---

[12] Adapted from Model Employment Law Jury Instructions, Faculty of Federal Advocates, *Ad Hoc Committee*, September 2013, available at http://www.facultyfederaladvocates.org/employment-jury-instructions/; Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006).

## PROPOSED INSTRUCTION NO. 5

*Causation (**Agreed**)*[13]

 Mr. Rufo must prove that Aclara would not have taken its materially adverse employment actions against him but for any protected activity that he engaged in. To prove this, he does not need much to show that his protected activity was the sole factor in the decisions Aclara took against him. Instead, Aclara may be held liable for retaliation even if other factors contributed, so long as retaliation was the factor that made the difference. Ultimately, you must decide whether any protected activity by Mr. Rufo was the determinative factor on the disciplinary action that was taken by Aclara. "Determinative factor" means that if not for Mr. Rufo's actions, the disciplinary action(s) would not have occurred

---

[13] Adapted from Model Employment Law Jury Instructions, Faculty of Federal Advocates, *Ad Hoc Committee*, September 2013, available at http://www.facultyfederaladvocates.org/employment-jury-instructions/; see also Gross v. FBL Fin. Servs., Inc., 557 U.S. 167 (2009); *Jones v. Okla. City Pub. Schs.*, 617 F.3d 1273, 1277-78 (10th Cir. 2010); *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993).

## PROPOSED INSTRUCTION NO. 6

### *Proof of Retaliatory Intent (**Agreed**)*[14]

Mr. Rufo has the burden of proving Aclara's retaliatory intent.  Retaliation is intentional if it is done voluntarily, deliberately, and willfully.  However, Mr. Rufo is not required to have direct evidence of retaliatory intent. Mr. Rufo can present direct or circumstantial evidence to show that his claimed protected activity caused Aclara's materially adverse actions against him.

Direct evidence of retaliation is remarks or actions that, if believed, prove that Mr. Rufo's claimed protected activity was the cause of Aclara's materially adverse actions against him.

Indirect or circumstantial evidence includes proof of a set of circumstances that allow you to reasonably believe that Mr. Rufo's claimed protected activity was the cause of the materially adverse actions that Aclara took against him.

Circumstantial evidence can be shown by suspicious timing of events, ambiguous or contradictory statements, and other bits and pieces of information from which you infer an intent to retaliate. Evidence of a pattern of retaliatory conduct occurring soon after protected activity occurs could also raise an inference of retaliatory motive.

In making a determination as to whether there was intentional retaliation in this case, you may consider any statement made or act done or omitted by a person whose intent is at issue, as well as all other facts and circumstances that indicate his or her state of mind.

---

[14] Adapted from Federal Employment Jury Instructions Par. 1:300 (1999) & McNamara, Fed. Employment Jury Instruc. § 3.326 (2014) (as modified); 42 U.S.C. § 1981 *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973); *Carter v. Ball,* 39 F.3d 450, 460 (4th Cir. 1994); *Stacks v. Southwestern Bell Yellow Pages, Inc.,* 996 F.2d 200, 201 (8th Cir. 1993); *Troupe v. May Department Stores, Inc.,* 20 F.3d 734, 736 (7th Cir. 1994); *Hunt-Goliday v. Metro. Water Reclamation Dist. Of Greater Chicago,* 104 F.3d 1004, 1011 (7th Cir. 1997); *Jackson v. RKO Bottlers of Toledo, Inc.,* 743 F.2d 370, 377 n.4 (6th Cir. 1984).

## PROPOSED INSTRUCTION NO. 7

### *Pretext (**Partially Disputed**)*[15]

Mr. Rufo claims that Aclara's stated reason for its materially adverse employment actions are not the true reasons, but instead pretext (or excuses) to cover up for retaliation. If you do not believe one or more of the reasons Aclara offered for its actions toward Mr. Rufo, then you may, but are not required to, infer that retaliation was the motivating factor in Aclara's decision. Mr. Rufo need not disprove every reason stated by Aclara in order to prove pretext.[16]

Mr. Rufo may show that Aclara's stated reasons for its decisions are pretextual (not the true reasons) in several ways. Some examples of ways (although these are not the only ways) in which you may determine that Aclara's stated reasons are pretext are:

- **[Evidence that any one the of Aclara's stated reasons for the decisions are false, contradictory, or implausible;[17]**
- **Evidence that Aclara acted contrary to a written or unwritten company policy or an established company practice;[18]**

---

[15] Adapted from Model Employment Law Jury Instructions, Faculty of Federal Advocates, *Ad Hoc Committee*, September 2013, available at http://www.facultyfederaladvocates.org/employment-jury-instructions/.

[16] *Fuentes v. Perskie*, 32 F.3d 759, 764 n.7 (3d Cir. 1994) ("If the defendant proffers a bagful of legitimate reasons, and the plaintiff manages to cast substantial doubt on a fair number of them, the plaintiff may not need to discredit the remainder. That is because the factfinder's rejection of some of the defendant's proffered reasons may impede the employer's credibility seriously enough so that a factfinder may rationally disbelieve the remaining proffered reasons, even if no evidence undermining those remaining rationales in particular is available");
    *Moser v. MCC Outdoor, L.L.C.*, 630 F. Supp. 2d 614, 628 (M.D.N.C. 2009) (same);
*Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1126 (10th Cir. 2005) (same).

[17] *Kandrac v. Charleston Cty. Sch. Dist.*, No. 2:04-CV-23318-DCN, 2007 U.S. Dist. LEXIS 29864, at *23-24 (D.S.C. Mar. 16, 2007), citing *Winarto v. Toshiba Amer. Elecs. Components, Inc.*, 274 F.3d 1276, 1284 (9th Cir. 2001); *Nichols v. Ashland Hosp. Corp.*, 251 F.3d 496, 502-03 (4th Cir. 2001).

[18] *Jones v. Hydro Conduit Corp.*, No. 3:10-776-MBS-PJG, 2012 U.S. Dist. LEXIS 44768, at *15 (D.S.C. Jan. 10, 2012).

- **Evidence that Aclara otherwise exhibited disturbing procedural irregularities in dealing with Mr. Rufo;[19]**
- **Evidence that Mr. Rufo was viewed as a good performer prior to his engaging in protected activity;[20] and**
- **Evidence that any protected activities you find that Mr. Rufo engaged in were closely proximate in time to Aclara's alleged retaliatory actions.[21]]**

If you find pretext, you may, but are not required to, infer that retaliation was the motivating factor that made a difference in Aclara's treatment of Mr. Rufo. Ultimately, you must decide if you believe that any materially adverse employment actions against Rufo by Aclara were motivated by any protected activity by Rufo.

**NOTE:**

**<u>Plaintiff's Position: Inclusion of Bracketed Examples of Pretext</u>**

- **The bracketed and emboldened text is proposed by Plaintiff. Plaintiff asserts it is helpful to the jury to illustrate the various was that the law has stated that pretext (an esoteric legal concept) can be found. Further, these bullet points are taken from the cited pattern instruction.**

**<u>Defendant's Position: Inclusion of Bracketed Examples of Pretext</u>**

- **Defendant asserts that the inclusion of specific examples of pretext is unusual in this context, unnecessary, and unduly suggestive.  Instead, the jury should be permitted to exercise its common sense to determine if the facts as introduced conform with the uncomplicated concept of pretext.**

---

[19] *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266-68 (1977).

[20] *Colgan v. Fisher Sci. Co.*, 935 F.2d 1407, 1422-23 (3d Cir. 1991) (*en banc*), *cert denied*, 502 U.S. 941 (1991).

[21] *Foster v. Univ. of Md.-Eastern Shore*, 787 F.3d 243, 253 (4th Cir. 2015); *Jalil v. Avdel Corporation*, 873 F.2d 701, 709 (3rd Cir. 1989).

## PROPOSED INSTRUCTION NO. 8(a)

### Business Judgment (**Plaintiff's Proposed Instruction**)[22]

Aclara has offered nonretaliatory reasons for its actions towards Mr. Rufo If you believe Aclara's stated reasons and if you find that the its actions towards Mr. Rufo would have occurred because of Aclara's stated reasons regardless of Mr. Rufo's protected activity, then you must find for Aclara. If you disbelieve Aclara's stated reasons for its conduct, then you may, but are not required to, find that Mr. Rufo has proved intentional retaliation. In determining whether Aclara's stated reasons for its actions were pretext, or excuses, for retaliation, you may not question Aclara's business judgment. You cannot find intentional retaliation simply because you disagree with Aclara's business judgment or believe it is harsh or unreasonable. You are not to consider Aclara's wisdom. However, you may consider whether Mr. Rufo has proven that Aclara's reason is merely a cover-up for discrimination.

## PROPOSED INSTRUCTION NO. 8(b)

### Business Judgment (**Defendant's Proposed Instruction**)[23]

When deciding Mr. Rufo's retaliation claim, you must keep in mind that an employer is entitled to make business decisions for any reason, whether good or bad, so long as those decisions are not motivated by a factor that is illegal, such as retaliation.  Accordingly, Aclara is entitled to make its own subjective personnel decisions, regardless of whether or not you agree with the decision, and can make a decision about an employee for any reason that is not discriminatory, retaliatory, or otherwise illegal.  It is not your function as jurors to second-guess the decisions Aclara made with regard to Mr. Rufo if those decisions were otherwise lawful. Likewise, you may not find for Mr. Rufo and against Aclara just because you may disagree with Aclara's stated reasons for their decisions with regard to Mr. Rufo, or because you believe that a decision was harsh or unreasonable.  Instead, your

---

[22] Adapted from Model Civ. Jury Instr. 3rd Cir.  5.1.2 (2018).

[23] McNamara & Southerland, *Federal Employment Jury Instructions* (2005), §3:361, §2:540; *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 259 (1981); *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 576 (1978); *Norbuta v. Loctite Corp.*, 1 F. App'x 305, 314 (6th Cir. 2001); *Walker v. AT&T Technologies*, 995 F.2d 846, 849 (8th Cir. 1993).

function is to determine only whether in making its decisions retaliation was the motivating factor in any of those decisions.

**NOTE:**

<u>**Plaintiff's Position:**</u>

- **Plaintiff asserts that his proposed instruction 15(a) is a correct statement of law and taken entirely from the Third Circuit pattern instructions. Plaintiff further asserts that Defendant's proposed instruction 15(b) is largely drafted by Defendant in an argumentative and misleading manner. Specifically, the words "It is not your function as jurors to second-guess the decisions" implicitly contradict the basic concept that the jury is to second-guess the employer's decisions by using circumstantial evidence to determine whether they are pretext. The fact that Defendant includes the proviso "if otherwise lawful" does not cure the deficiency because this language is legalistic and intended to bury the function of pretext in favor of Defendant's business judgment.**

<u>**Defendant's Position:**</u>

- **Defendant asserts that its proposed instruction is a correct statement of law and also adapted from a commonly used pattern instruction, which itself is based on applicable law.  In essence, this disagreement is not a substantive one: Defendant does not contest the accuracy of Plaintiff's proposed instruction, but instead submits that Defendant's proposed instruction is superior in terms of clarity, tone, and focus on the centrality of retaliation (to the exclusion of other, subjective factors) to the jury's deliberations.**

## PROPOSED INSTRUCTION NO. 9

### *Evidence (Agreed)*[24]

The evidence from which you are to find the facts consists of the following:

> 1. The testimony of the witnesses; and
> 2. Documents and other things received as exhibits;
> **[3. Any facts that are stipulated – that is, formally agreed to by the parties; and**
> **4. Any facts that are judicially noticed; that is, facts I say you must accept as true even without other evidence.]**

The following things are not evidence:

> 1. Statements, arguments, and questions of the lawyers for the parties in this case;
> 2. Objections by lawyers.
> 3. Any testimony I tell you to disregard; and
> 4. Anything you may see or hear about this case outside the courtroom.

You must make your decision based only on the evidence that you see and hear in court.  Do not let rumors, suspicions, or anything else that you may see or hear outside of court influence your decision in any way.

You should use your common sense in weighing the evidence.  Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves.  If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

There are rules that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence, and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. This simply means that the lawyer is requesting that I make a decision on a particular rule of evidence. You should not be influenced by the fact that an

---

[24] Adapted from Model Civ. Jury Instr. 3d Cir. 1.5 (2017).

objection is made. Objections to questions are not evidence. Lawyers have an obligation to their clients to make objections when they believe that evidence being offered is improper under the rules of evidence.  You should not be influenced by the objection or by the court's ruling on it. If the objection is sustained, ignore the question. If it is overruled, treat the answer like any other. If you are instructed that some item of evidence is received for a limited purpose only, you must follow that instruction.

Also, certain testimony or other evidence may be ordered struck from the record and you will be instructed to disregard this evidence. Do not consider any testimony or other evidence that gets struck or excluded.  Do not speculate about what a witness might have said or what an exhibit might have shown.

**NOTE: The bracketed and emboldened text is necessary if a stipulation is offered into evidence or if facts are judicially noticed. It is not presently anticipated by the parties that this will occur.**

## PROPOSED INSTRUCTION NO. 10

*Preponderance of the Evidence (**Agreed**)*[25]

I have instructed you that Mr. Rufo has the burden to prove his claim by a preponderance of the evidence. This means that Mr. Rufo has to prove to you, in light of all the evidence, that what he claims is more likely true than not true.

To say it differently: if you were to put the evidence favorable to Mr. Rufo and the evidence favorable to Aclara on opposite sides of the scales, Mr. Rufo would have to make the scales tip somewhat on his side.  If Mr. Rufo fails to meet this burden, the verdict must be for Aclara. If you find after considering all the evidence that a claim or fact is more likely true than not true, then the claim or fact has been proved by a preponderance of the evidence.

In determining whether any fact has been proved by a preponderance of evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

On certain issues, called affirmative defenses, Aclara has the burden of proving the elements of the defense by a preponderance of the evidence.  I will instruct you on the facts that will be necessary for you to find on each affirmative defense. An affirmative defense is proven if you find, after considering all evidence in the case, that Aclara has succeeded in proving that the required facts are more likely so than not so.

You may have heard of the term "proof beyond a reasonable doubt." That is a stricter standard of proof and it applies only to criminal cases. It does not apply in civil cases such as this. So you should put it out of your mind.

---

[25] Adapted from Model Civ. Jury Instr. 3d Cir. 1.10 (2017); Model Civ. Jury Instr. 9th Cir. 1.6 (2017).

## PROPOSED INSTRUCTION NO. 11

### Weight of Testimony (**Agreed**)[26]

You are the sole judges of the credibility of the witnesses and the weight their testimony deserves. You may be guided by the appearance and conduct of a witness, or by the manner in which a witness testifies, or by the character of the testimony given, or by evidence contrary to the testimony.

You should carefully examine all the testimony given, the circumstances under which each witness has testified, and every matter in evidence tending to show whether a witness is worthy of belief. Consider each witness's intelligence, motive and state of mind, and demeanor or manner while testifying.

Consider the witness's ability to observe the matters as to which the witness has testified, and whether the witness impresses you as having an accurate recollection of these matters. Also, consider any relation each witness may have with either side of the case, the manner in which each witness might be affected by the verdict, and the extent to which the testimony of each witness is either supported or contradicted by other evidence in the case.

Inconsistencies or discrepancies in the testimony of a witness, or between the testimony of different witnesses may or may not cause you to discredit such testimony. Two or more persons seeing an event may see or hear it differently.

In weighing the effect of a discrepancy, always consider whether it pertains to a matter of importance or an unimportant detail, and whether the discrepancy results from innocent error or intentional falsehood.

After making your own judgment, you will give the testimony of each witness such weight, if any, that you may think it deserves. In short, you may accept or reject the testimony of any witness, in whole or in part.

In addition, the weight of the evidence is not necessarily determined by the number of witnesses testifying to the existence or nonexistence of any fact. You may find that the testimony of a small number of witnesses as to any fact is more credible than the testimony of a larger number of witnesses to the contrary.

---

[26] 3 Fed. Jury Prac. & Instr. § 105:01 (6th ed.).

## PROPOSED INSTRUCTION NO. 12

*Bias of Witnesses (**Agreed**)*[27]

In deciding whether to believe a witness, you should specifically note any evidence of hostility or affection that the witness may have towards one of the parties. Likewise, you should consider evidence of any other interest or motive that the witness may have in cooperating with a particular party.

It is your duty to consider whether the witness has permitted any such bias or interest to color his or her testimony. In short, if you find that a witness is biased, you should view his or her testimony with caution, weigh it with care, and subject it to close and searching scrutiny.

---

[27] *Davis v. Alaska*, 415 U.S. 308, 316 (1974).

## PROPOSED INSTRUCTION NO. 13

*Inconsistent Statements or Conduct (**Agreed**)*[28]

A witness may be discredited or "impeached" by contradictory evidence or by evidence that at some other time the witness has said or done something that is inconsistent with the witness's present testimony. If you believe any witness has been impeached and thus discredited, it is up to you to give the testimony of that witness whatever credibility, if any, you think it deserves.

If a witness is shown knowingly to have testified falsely concerning any material matter, you have a right to distrust such witness's testimony in other particulars and you may reject all the testimony of that witness or give it whatever credibility as you may think it deserves. An act or omission is "knowingly" done if it is done voluntarily and intentionally, and not because of mistake or accident or other innocent reason.

---

[28] 1 Devitt, Blackmar & Wolff, § 73.04; Model Civ. Jury Instr. 3d Cir. 2.1 (2017).

## PROPOSED INSTRUCTION NO. 14

*Compensatory Damages (**Agreed**)*[29]

I am now going to instruct you on damages.  Just because I am instructing you on how to award damages does not mean that I have any opinion on whether or not Aclara should be held liable.

If you find by a preponderance of the evidence that Aclara intentionally retaliated against Mr. Rufo for engaging in protected activity, then you must consider the issue of compensatory damages.  You must award Mr. Rufo an amount that will fairly compensate him for any injuries he actually sustained as a result of Aclara's conduct. The damages that you award must be fair compensation, no more and no less. The award of compensatory damages is meant to put Mr. Rufo in the position he would have occupied if the discrimination had not occurred. Mr. Rufo has the burden of proving damages by a preponderance of the evidence.

Mr. Rufo must show that the injury would not have occurred without retaliation by Aclara. Mr. Rufo must also show that retaliation by Aclara played a substantial part in bringing about the injury, and that the injury was either a direct result, or a reasonably probable consequence of Aclara's act. This test — a substantial part in bringing about the injury — is to be distinguished from the test you must employ in determining whether Aclara's actions were caused by retaliation. In other words, even assuming that Aclara's actions were caused by retaliation, Mr. Rufo is not entitled to damages for an injury unless Aclara's retaliatory actions actually played a substantial part in bringing about that injury.

In determining the amount of any damages that you decide to award, you should be guided by common sense. You must use sound judgment in fixing an award of damages, drawing reasonable inferences from the facts in evidence. You may not award damages based on sympathy, speculation, or guesswork.

You may award damages for any pain, suffering, inconvenience, mental anguish, or loss of enjoyment of life that Mr. Rufo experienced as a consequence of Aclara's alleged retaliation, if proven. No evidence of the monetary value of

---

[29] Adapted from Model Civ. Jury Instr. 3rd Cir. 6.4.1 (2018); 3 O'Malley, Grenig and Lee, <u>Fed. Jury Prac. & Instruc.</u>, § 171:93 (6th ed.) (as modified).

intangible things such as pain and suffering has been, or need be, introduced into evidence. There is no exact standard for fixing the compensation to be awarded for these elements of damage. Any award you make should be fair in light of the evidence presented at the trial.

I instruct you that in awarding compensatory damages, you are not to award damages for the amount of wages that Mr. Rufo would have earned, either in the past or in the future, if he had continued in employment with Aclara. These elements of recovery of wages that Mr. Rufo would have received from Aclara are called "back pay" and "front pay." Back pay is to be awarded separately under instructions that I will soon give you, and any amount for back pay is to be entered separately on the verdict form.

You may award damages for losses that Mr. Rufo may suffer in the future as a result of Aclara's retaliation. For example, you may award damages for loss of earnings resulting from any harm to Mr. Rufo's reputation that was suffered as a result of Aclara's retaliation. Where a victim of retaliation has been terminated by an employer, and has sued that employer for retaliation, he may find it more difficult to be employed in the future, or may have to take a job that pays less than if the retaliation had not occurred. That element of damages is distinct from front pay, or the amount of wages Mr. Rufo would have earned in the future from Aclara if he had retained his job there.

As I instructed you previously, Mr. Rufo has the burden of proving his damages by a preponderance of the evidence. But the law does not require that Mr. Rufo prove the amount of his losses with mathematical precision; it requires only as much definiteness and accuracy as circumstances permit.

In assessing damages, you must not consider attorney fees or the costs of litigating this case. Attorney fees and costs, if relevant at all, are for the court and not the jury to determine. Therefore, attorney fees and costs should play no part in your calculation of any damages.

## PROPOSED INSTRUCTION NO. 15

*Back Pay Damages (**Partially Disputed**)*[30]

**[If you find that Aclara intentionally retaliated against Mr. Rufo, then you must determine the amount of damages that Aclara's actions have caused Mr. Rufo.  Mr. Rufo has the burden of proving damages by a preponderance of the evidence.]**

You may award as back pay damages an amount that reasonably compensates Mr. Rufo for any lost wages and benefits, taking into consideration any increases in salary and benefits, including pension, that Mr. Rufo would have received from Aclara had Mr. Rufo not been the subject of Aclara's intentional retaliation.

Back pay damages, if any, apply from the date Aclara took a materially adverse employment action against Mr. Rufo until the date of your verdict.

You must reduce any back pay award by the amount of the expenses that Mr. Rufo would have incurred in making those earnings.

If you award back pay, you are instructed to deduct from the back pay figure whatever wages Mr. Rufo has obtained from other employment during this period.

**NOTE:**

**Plaintiff's Position: Language Regarding Burden**

- **Plaintiff objects to the bracketed and emboldened language as being redundant to the nearly identical language in proposed instruction no. 13. Repeating instructions (or language therefrom) multiple times creates a false impression that certain instructions are more important than others.**

**Defendant's Position: Language Regarding Burden**

- **Defendant states that the bracketed and bolded language is critical to reminding the jury that, in contrast to some other employment laws,**

---

[30] Adapted from Model Civ. Jury Instr. 3rd Cir. 6.4.3 (2018).

back pay under Section 1981 is not automatically awarded, but is instead discretionary and subject to Plaintiff's burden of proof.

## PROPOSED INSTRUCTION NO. 16

*Taxation of Compensatory Damages (**Disputed**)*[31]

Any damages that you assess in Mr. Rufo's favor are "income" within the meaning of Federal and Virginia income tax laws and Mr. Rufo will have to pay income tax on any amounts assessed as damages. In determining the amount of the fair and reasonable compensation that you assess in Mr. Rufo's favor, you may take into account the fact that he will have to pay income taxes on your assessment.

**NOTE:**

**Plaintiff's Position:**

- **This instruction is proposed by Plaintiff and objected to by Defendant. Plaintiff asserts that the law as cited in the footnote to the proposed instruction supports this as an element of his damages.**

**Defendant's Position:**

- **Defendant asserts that such an instruction is inflammatory, unnecessary, and an attempt to have the jury inflate any gross award beyond what is reasonably awardable.  For instance, Mr. Rufo would have paid taxes on any wages he would have received had his position not been eliminated; therefore, back pay should not be artificially inflated so as to make it effectively tax free.**

---

[31] See Office of Chief Counsel, Internal Revenue Service Memorandum, p. 15, available at https://www.irs.gov/pub/lanoa/pmta2009-035.pdf

## PROPOSED INSTRUCTION NO. 17(a)
### *Mitigation of Damages (**Plaintiff's Proposed Instruction**)*[32]

You are instructed that Mr. Rufo has a duty under the law to "mitigate" his damages--that means that Mr. Rufo must take advantage of any reasonable opportunity that may have existed under the circumstances to reduce or minimize the loss or damage caused by Aclara.  It is Aclara's burden to prove that Mr. Rufo has failed to mitigate.  So if Aclara persuades you by a preponderance of the evidence that Mr. Rufo failed to take advantage of an opportunity that was reasonably available to him, then you must reduce the amount of Mr. Rufo's damages by the amount that could have been reasonably obtained if he had taken advantage of such an opportunity.

## PROPOSED INSTRUCTION NO. 17(b)
### *Mitigation of Damages (**Defendant's Proposed Instruction**)*[33]

Mr. Rufo must make every reasonable effort to minimize or reduce his damages for loss of compensation by seeking employment.  This referred to as "mitigation of damages."  Aclara must prove by a preponderance of the evidence that Mr. Rufo failed to mitigate his damages for loss of compensation.

If you determine Mr. Rufo is entitled to lost compensation, you must reduce the loss by

1.     What plaintiff earned and received as benefits; and

2.     What plaintiff could have earned by reasonable effort during the period from the end of Mr. Rufo's employment with Aclara until the date of trial.

Mr. Rufo must accept employment that is "of a like nature."  In determining whether employment is "of a like nature," you may consider:

1.     the type of work,

2.     the hours worked,

---

[32] Adapted from Model Civ. Jury Instr. 3rd Cir. 6.4.1 (2018)

[33] O'Malley, Grenig & Lee, Federal Jury Practice and Instructions – Civil, Vol. 3 § 171.95 (5th ed. 2000

3.      the compensation,

4.      the job security,

5.      the working conditions, and

6.      other conditions of employment.

You must decide whether Mr. Rufo acted reasonably in not seeking or accepting a particular job.  If you determine Mr. Rufo did not make reasonable efforts to obtain another similar job, you must decide whether any damages resulted from Mr. Rufo's failure to do so.

You must not compensate Mr. Rufo for any portion of his loss of compensation resulting from his failure to make reasonable efforts to reduce his loss of compensation.

**NOTE:**

**<u>Plaintiff's Position:</u>**

- **Plaintiff asserts that his proposed instruction 17(a), adapted from the Third Circuit model instructions, adequately instructs the jury on his obligation to mitigate his damages. Plaintiff asserts that Defendant's proposed instruction 17(b) is unnecessarily long, complex, and implicitly argumentative.**

**<u>Defendant's Position:</u>**

- **Defendant asserts that the Third Circuit Court of Appeals model form urged by Plaintiff is inadequate to fully inform the jury on the concepts applicable to Mr. Rufo's burden to mitigate his damages within the context of an employment claim.  Defendant's proposed language – which itself derives from a model instruction – is both neutral in tone and accurate in substance.**

## PROPOSED INSTRUCTION NO. 18

*Malice or Reckless Indifference (**Partially Disputed**)*[34]

Mr. Rufo claims that Aclara acted with malice or reckless indifference to his federally protected rights and that as a result there should be an award of what are called "punitive" damages.

A finding of malice or reckless indifference against Aclara is permissible in this case only if you find by a preponderance of the evidence that a management official of Aclara personally acted with malice or reckless indifference to Mr. Rufo's federally protected rights. You are instructed that Michael Garcia, Lyn Salvo, Gina Petrella, and Jill Mecey are management employees of Aclara.

An action is with malice if a person knows that it violates federal law prohibiting retaliation and does it anyway. An action is with reckless indifference if taken with knowledge that it may violate the law.

**[However, even if you make a finding that there has been an act of retaliation, you cannot make a finding of malice or reckless indifference against Aclara if Aclara proves by a preponderance of the evidence that it made a good-faith attempt to comply with the law, by implementing policies and procedures designed to prevent unlawful retaliation such as that suffered by Mr. Rufo.]**

**NOTE:**

**Plaintiff's Position:**

- **The emboldened and bracketed text is a correct statement of law, but it is also repeated almost verbatim in Proposed Instruction No. 19. Plaintiff asserts that no instruction (or language therefrom) should be repeated more than once to avoid creating a false impression that such language is more important than other instructions that are only given once. Plaintiff insists that this applies regardless of the fact that Proposed Instruction No. 19 will not be read until after the jury's initial deliberations, as jurors are presumed by law to remember and follow**

---

[34] Adapted from Model Civ. Jury Instr. 3rd Cir. 6.4.2 (2018)

**their instructions.**

**<u>Defendant's Position:</u>**

- **Defendant posits that its good faith efforts to comply with Section 1981 is relevant to both the jury's consideration of malice or reckless indifference (during deliberations during the liability phase of trial), as well as its consideration of punitive damages (during the punitive damages phase of trial). Indeed, in *Kolstad v. American Dental Ass'n.*, 527 U.S. 526, 544, the U.S. Supreme Court recognized that "[w]here an employer has undertaken such good faith efforts at Title VII compliance, <u>it demonstrates that it never acted in reckless disregard of federally protected rights</u>." (internal citations and quotations omitted). Therefore, the contested portion of this instruction must be given during the liability phase of trial, as the jury must consider the concept of good faith efforts to comply with Section 1981 in determining whether or not Aclara acted with malice or reckless indifference to Mr. Rufo's federally protected rights. The same portion must also be given during the punitive damages phase of trial, if any, because the issue of vicarious liability for punitive damages remains of the utmost importance during the second phase of trial.**

### PROPOSED INSTRUCTION NO. 19 (For Punitive Damages Phase)

#### *Punitive Damages (**Agreed**)[35]*

Because you have decided that Aclara acted with malice or reckless indifference to Mr. Rufo's federally-protected rights, you now must determine whether to award what are called "punitive damages." A jury may award punitive damages to punish a defendant, and to deter the defendant and others like the defendant from committing such conduct in the future.

But even if you make a finding that there has been an act of retaliation with malice or reckless disregard of Mr. Rufo's rights, you cannot award punitive damages if Aclara proves by a preponderance of the evidence that it made a good-faith attempt to comply with the law, by implementing policies and procedures designed to prevent unlawful retaliation such as that suffered by Mr. Rufo.

An award of punitive damages is discretionary; that is, if you find that the legal requirements for punitive damages are satisfied, and that Aclara has not proved that it made a good-faith attempt to comply with the law, then you may decide to award punitive damages, or you may decide not to award them. I will now discuss some considerations that should guide your exercise of this discretion.

You should consider the purposes of punitive damages. The purposes of punitive damages are to punish a defendant for a malicious or reckless disregard of federal rights, or to deter a defendant and others like the defendant from doing similar things in the future, or both. Thus, you may consider whether to award punitive damages to punish Aclara. You should also consider whether actual damages standing alone are sufficient to deter or prevent Aclara from again performing any wrongful acts that may have been performed. Finally, you should consider whether an award of punitive damages in this case is likely to deter others from performing wrongful acts similar to those Aclara may have committed.

Next, you should consider the purposes of punitive damages in deciding the amount of punitive damages to award. That is, in deciding the amount of punitive damages, you should consider the degree to which Aclara should be punished for the wrongful conduct at issue in this case, and the degree to which an award of one

---

[35] Adapted from Model Civ. Jury Instr. 3rd Cir. 6.4.2 (2018)

sum or another will deter Aclara or others from committing similar wrongful acts in the future.

**The extent to which a particular amount of money will adequately punish a defendant, and the extent to which a particular amount will adequately deter or prevent future misconduct, may depend upon a defendant's financial resources. Therefore, if you find that punitive damages should be awarded against Aclara, you may consider the financial resources of Aclara in fixing the amount of those damages**.

**NOTE:**

**<u>Defendant's Position: Aclara's Financial Resources</u>**

- **Defendant does not disagree with the substance of this instruction provided that it is given only if the Court decides that the jury may consider punitive damages, and objects to the bolded paragraph only to the extent that admissible evidence of Aclara's financial resources is not introduced during the punitive damages phase of trial, if any.**

Respectfully Submitted,

**Joseph Rufo**

By:  */s/ Joshua Erlich, Esq.*
Bruce C. Fox, Esquire (*pro hac vice*)
bruce.fox@obermayer.com
Andrew J. Horowitz, Esquire (*pro hac vice*)
andrew.horowitz@obermayer.com
Obermayer Rebmann Maxwell & Hippel LLP
500 Grant Street, Ste. 5240
Pittsburgh, PA 15219
412-566-1500 (p)
412-281-1530 (f)

Joshua Erlich (VA Bar No. 81298)
The Erlich Law Office, PLLC
2111 Wilson Blvd, Suite 700
Arlington, VA  22201
Tel: (703) 791-9087
Fax:  (703) 351-9292
Email: jerlich@erlichlawoffice.com

*Counsel for Plaintiff, Joseph Rufo*

**Aclara Technologies, LLC**

By   */s/  J. Clay Rollins*
J. Clay Rollins, Esquire
Virginia State Bar Number 84382
clay.rollins@ogletreedeakins.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
901 East Byrd Street, Suite 1300
Riverfront Plaza, West Tower
Richmond, VA 23219
Tel.:   (804) 663-2330
Fax:    (855) 843-1809

Heidi Kuns Durr, Esquire (*pro hac vice*)
heidi.durr@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
7700 Bonhomme Avenue, Suite 650
St. Louis, MO 63015
Tel.:   (314) 802-3935

John B. Flood, Esquire
Virginia State Bar Number 79813
john.flood@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1909 K Street, NW, Suite 1000
Washington, D.C.  20006
Tel: (202) 887-0855

*Counsel for Defendant*

## **Certificate of Service**

I hereby certify that on this 24th day of October 2018, I electronically filed the foregoing with the clerk of the court using the CM/ECF system, which will send notification of such filing to counsel for Plaintiff:

Joshua H. Erlich, Esquire
Virginia State Bar No.: 81298
The Erlich Law Office PLLC
2111 Wilson Blvd., Suite 700
Arlington, VA 22201
Voice: (703) 791-9087
Fax: (703) 351-9292
jerlich@erlichlawoffice.com

Bruce Carl Fox, Esquire (*pro hac vice*)
Penn. Bar No.: 42576
Andrew Jack Horowitz (*pro hac vice*)
Penn. Bar No.: 311949
Obermayer Rebmann Maxwell & Hippel, LLP
BNY Mellon Center, Suite 5240
500 Grant Street
Pittsburgh, PA 15219
andrew.horowitz@obermayer.com
bruce.fox@obermayer.com

*Counsel for Plaintiff*

**Aclara Technologies, LLC**

By   /s/  *J. Clay Rollins* 
J. Clay Rollins, Esquire
Virginia State Bar Number 84382
clay.rollins@ogletreedeakins.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
901 East Byrd Street, Suite 1300
Riverfront Plaza, West Tower
Richmond, VA 23219
Tel.:    (804) 663-2330
Fax:    (855) 843-1809

*Counsel for Defendant*